UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANDREW PRATT,

                         Plaintiff,

            v.                         6:08-CV-1003-DNH-DEP

MICHAEL F. HOGAN, Commissioner, New York
State Office of Mental Health; and DONALD
SAWYER, Executive Director, Central New York
Psychiatric Center,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

ANDREW PRATT
18859/405
Plaintiff, *Pro se*
CNY Psychiatric Center
P.O. Box 300
Marcy, New York 13403

HON. ANDREW M. CUOMO            AARON M. BALDWIN, ESQ.
Attorney General of the                  Asst. Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       Plaintiff Andrew Pratt ("plaintiff") brings this action pro se pursuant to 42 U.S.C. §

1983 ("§ 1983") challenging the constitutionality of the sex offender treatment program (the

"program") administered by the New York State Office of Mental Health ("OMH") at the Central New York Psychiatric Center ("CNYPC").

Plaintiff alleges three aspects of the program are unconstitutional in violation of his First and Fifth Amendment rights of the United States Constitution. First, plaintiff alleges the program promotes religious tenets to the extent that it violates his First Amendment right to abstain from religious practices. Second, he alleges the program's use of a penile plethysmograph[1] ("PPG") examination violates his Fifth Amendment right against self-incrimination. Third, plaintiff alleges the program unlawfully compels him to submit to a polygraph examination also in violation of his Fifth Amendment right against self-incrimination. Plaintiff seeks injunctive relief prohibiting the challenged aspects of the program and monetary damages for each separate constitutional violation.

Defendants Michael F. Hogan, Commissioner of the OMH and Donald Sawyer, Executive Director of the CNYPC, (collectively referred to as "defendants") move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants also move to dismiss plaintiff's claims for monetary damages on the ground that they are entitled to qualified immunity as a matter of law. Plaintiff opposes defendants' motion. Arguments were taken on submission without oral argument.

---

[1] A plethysmograph is "an instrument for determining and registering variations in the size of an organ, limb, or part resulting from changes in the amount of blood present or passing through it." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 952 (Frederick C. Mish et al. eds., 11th ed. 2003).

## II. BACKGROUND

On November 9, 2007, plaintiff was placed with the OMH while awaiting trial pursuant to Article 10 of the Mental Hygiene Law at CNYPC. On June 16, 2008, a New York State Supreme Court jury found, by clear and convincing evidence, that plaintiff possessed a mental abnormality and condition that predisposed him to committing sex offenses. Pursuant to the court's order, plaintiff was civilly committed to CNYPC under custody and care of the OMH as per Article 10 of the Mental Hygiene Law.

As a patient at CNYPC, plaintiff was enrolled in the "Good Lives Model and Boundaries Program." The "Good Lives Model and Boundaries Program" asks patients to rank "spirituality" as one of the fourteen primary needs in creating an identity while also identifying and ranking other secondary needs. Additionally, patients are instructed to translate the story of a Chinese parable into their own lives. Other treatment phases involves Dialetic Behavior Therapy ("DBT"), a form of therapy for mental disorders that teaches skills to cope with life stressors, and is based upon Eastern philosophy and spiritual training that are similar to Western contemplative and Eastern meditation practices. According to defendants, this treatment enhances therapists' capabilities to treat patients effectively. Other phases of the program include polygraph and PPG testing, in which consent to such examinations furthered the plaintiff's treatment in hopes of obtaining a release from civil confinement.

The polygraph includes the Sexual History Polygraph, the Offense Polygraph, and the Formative Event Polygraph. Each examination seeks to identify a patient's specific treatment needs and promote the patient's progress through the program. The polygraphs address the patient's behavior during treatment as well as looking back at a patient's prior

sexual, emotional, and physical abuse history. Although a patient's consent is needed for testing, refusal to undergo the requested polygraph examination may slow or prevent advancement in the program's treatment phase, thereby delaying or in some cases preventing a patient's release. In addition, the program requires patients to undergo PPG testing to assess sexual interests. The procedure involves wrapping a sterilized gauge around the penis, which measures the velocity of blood flow through the organ, while the patient listens to and views depictions of sexual and non-sexual material. As with refusal to undergo the polygraph examination, patients who refuse to consent to the PPG may be prevented from advancing in the program.

On July 23, 2008, plaintiff filed an Article 78 petition in New York State Supreme Court alleging defendants implemented the program with religious programming and terminology in violation of state and federal law. On September 17, 2008, plaintiff filed this § 1983 action in federal court alleging the program's requirements for supervised release violated the First and Fifth Amendment of the United States Constitution. Plaintiff named the same defendants in his complaint as are named in his pending Article 78 state suit. Additionally, plaintiff's state court complaint contained virtually identical causes of action as to the instant § 1983 action, alleging that the "Good Lives Model and Boundaries Program" and DBT contained religious programming and terminology; however, plaintiff's state court complaint did not challenge the program's use of polygraph and PPG testing.

On December 18, 2008, a New York State Supreme Court dismissed plaintiff's Article 78 petition challenging the constitutionality of the program. On December 28, 2008, plaintiff filed a notice of appeal to the state's Appellate Division, Fourth Department. Plaintiff's state court appeal is currently pending.

### III. DISCUSSION

**A. Motion to Dismiss Under Rule 12(b)(1)**

Defendants argue plaintiff is barred from seeking relief in federal court for lack of subject matter jurisdiction because of his pending action in state court. Under Younger v. Harris and its progeny, federal courts abstain from intervening in ongoing state court proceedings when the "federal rights and federal interests . . . unduly interfere with the legitimate activities of the States." Younger v. Harris, 401 U.S. 37, 44, 91 S. Ct. 746, 750-51 (1971). The abstention doctrine in Younger, which involved state criminal trials, has since been extended to cover "federal civil litigation challenging certain other state proceedings." Kaufman v. Kaye, 466 F.3d 83, 86 (2d Cir. 2006) (citing Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)). The relevant question under Younger is "whether the state's procedural remedies *could* provide the relief sought[;] not whether the state *will* provide the constitutional ruling which the plaintiff seeks." Kaufman, 466 F.3d at 87 (emphasis in original) (quoting Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 79 (2d Cir. 2003)). Under the three conditions identified by the Second Circuit Court of Appeals, Younger abstention is required when: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of . . . federal constitutional claims." Spargo, 351 F.3d at 75.

In this case, defendants argue plaintiff's federal lawsuit seeking injunctive relief should be dismissed under all three Younger factors. Under the first factor, a plaintiff may not initiate a federal court claim before exhausting all available state appellate remedies unless

an exception applies. Kirschner v. Klemons, 225 F.3d 227, 234 (2d Cir. 2000). Here, plaintiff's state court action against the same defendants is still pending with the state's appellate court. In consideration of the second factor, the state has an important interest in determining the constitutionality of its sex offender programs. Younger abstention is appropriate where the intervention by "federal judicial power would disregard the comity between the States and the National Government" and disrupt the state's interest in the ongoing proceeding. Pennzoil Co v. Texaco, Inc., 481 U.S. 1, 11, 107 S. Ct. 1519, 1526 (1987). Furthermore, under the third factor, the similarity in constitutional issues affords plaintiff an adequate opportunity for judicial review of his federal constitutional claims in a state court proceeding. But see Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 101 (2d Cir. 2004) (different constitutional claims in state and federal court fails to afford plaintiff adequate opportunity for judicial review of federal constitutional claims). In contrast to plaintiff's state court suit, Younger abstention did not bar the federal lawsuit in Pellegrino because there were different plaintiffs in the state and federal court actions, Pellegrino, 380 F.3d at 101, whereas plaintiff's state court action and his federal court action both involve the same parties. Accordingly, Pellegrino is distinguishable and does not support the exercise of subject matter jurisdiction over plaintiff's federal claims for injunctive relief.

Plaintiff's failure to raise his self-incrimination claim in state court does not preserve his federal court claim since "Younger v. Harris contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." Gibson v. Berryhill, 411 U.S. 564, 577, 93 S. Ct. 1689, 1697 (1973). In Juidice v. Vail, the plaintiffs' federal suit was dismissed under Younger when the federal constitutional challenge

was not raised in state court because, as the Court reasoned, the plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." Juidice v. Vail, 430 U.S. 327, 337, 97 S. Ct. 1211, 1218 (1977); but see Gerstein v. Pugh, 420 U.S. 103, 108, n.9, 95 S. Ct. 854, 860 (1975) (federal intervention seeking injunctive relief allowed in state prosecution regarding lawfulness of "pretrial detention without a judicial hearing, [since the] issue could not be raised in defense of the criminal prosecution"). If it was "abundantly clear" that plaintiff had an opportunity to present their federal claims in the state proceedings, then "[n]o more is required to invoke Younger abstention." Juidice, 430 U.S. at 337, 97 S. Ct. at 1218. Federal plaintiffs cannot pass on the opportunity to assert federal constitutional claims in state court proceedings in an effort to obtain a later decision by a federal court. Temple of the Lost Sheep Inc. v. Abrams, 930 F.2d 178, 183 (2d Cir. 1991).

Here, plaintiff had a fair opportunity to assert his Fifth Amendment federal constitutional right in state court. Furthermore, the New York State Constitution affords individuals the right against self-incrimination in that no person shall "be compelled in any criminal case to be a witness against himself or herself." N.Y. Const. art. I, § 6. Therefore, the state court lawsuit affords plaintiff an adequate opportunity to raise constitutional objections. Plaintiff's omission of his Fifth Amendment objections to the program does not allow him to circumvent the jurisdictional defects presented by Younger. Rather, Younger bars plaintiff from asserting those claims in a future federal court proceeding because he failed to raise

such claims in his pending state court action. Defendants concede that the Younger doctrine extends only to plaintiff's claims for injunctive relief, see Defs.' Mem. of Law in Supp. Mot. to Dismiss, Dkt. No. 14-2, 35, and therefore, plaintiff's claims for monetary damages warrant further consideration.

### B. Motion to Dismiss under Rule 12(b)(6)

Defendants argue that plaintiff's claims for monetary damages must be dismissed because, *inter alia*, they are entitled to the defense of qualified immunity. Dismissal is warranted when, "accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 194 (2d Cir. 2003); Caiola v. Citibank, N.A., N.Y., 295 F.3d 312, 321 (2d Cir. 2002). In clarifying its decision in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957), the Supreme Court reasoned that plaintiffs need not meet heightened pleading requirements; instead, the plaintiff's plea must contain sufficient facts that render a claim "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

Defendants argue that even if plaintiff has plausible constitutional claims, qualified immunity shields the defendants from liability if the legal right or rule in question was not "clearly established" at the time the violation occurred. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Whether an established right existed is determined by "objective legal reasonableness." Harlow, 457 U.S. at 819, 102 S. Ct. at 2739. Qualified immunity bars a claim for monetary damages against government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, Id. at 2738.

Pursuant to the Supreme Court's holding in Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001), *modified by* Pearson v. Callahan, 129 S. Ct. 808 (2009), whether a state official was entitled to the defense of qualified immunity first required consideration of whether the facts alleged indicated the violation of a constitutional right, and second, if so, whether the right was clearly established at the time of defendant's alleged misconduct. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. Recently, the Supreme Court receded from the two-part inquiry in Saucier and held that the task of identifying the deprivation of a constitutional right was immaterial, in some instances, since "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Pearson, 129 S. Ct. at 816-18. The Court reasoned that the rigid nature of requiring district courts to first determine whether a constitutional violation occurred often produced fact-specific decisions of limited precedential value for future cases. Id. at 819. Accordingly, courts are now afforded greater flexibility for deciding first the issue of whether a constitutional right was clearly established at the time of a defendant's alleged violation. Id.

Here, plaintiff filed a § 1983 claim alleging defendants violated his First and Fifth Amendment constitutional rights while administering the state's sex offender treatment program. Even if plaintiff's allegations are sufficient to allege the violation of a constitutional right, defendants are entitled to the defense of qualified immunity if plaintiff's constitutional rights were not clearly established at the time he alleges his rights were violated. Harlow, 457 U.S. at 818, 102 S. Ct. at 2738. The inquiry therefore depends upon the "objective reasonableness of the action, assessed in light of the legal rules that were clearly established at the time [the action] was taken." Pearson, 129 S. Ct. at 822 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1962, 1699 (1999)).

### 1. **Plaintiff's First Amendment Claim**

The Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. In a free exercise case it is necessary to show "direct governmental compulsion." Engel v. Vitale, 370 U.S. 421, 430, 82 S. Ct. 1261, 1267 (1962). "[A] Free Exercise claim will be sustained only if the 'government has placed a substantial burden on the observation of a central religious belief'" that is not justified by a compelling state interest. Skoros v. City of New York, 437 F.3d 1, 39 (2d Cir. 2006) (quoting Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 384-85, 110 S. Ct. 668, 693 (1990)).

Plaintiff alleges the program subjects him, as an atheist, to religious practices and rituals based upon Zen Buddhism and Christianity, thereby preventing his abstention from religious practices. These alleged First Amendment violations include aspects of the "Good Lives Model and Boundaries Program" that plaintiff claims compels one to believe in "spirituality," and DBT, which includes relaxation programs that are partly based on eastern Zen and Western contemplative meditation practices. Plaintiff's allegations raise questions about the constitutionality of such programs, as the disclaimer about refusing to participate in the program may hinder or prevent a participant's advancement in the program, and release from civil confinement, creates questions regarding government compulsion to promote or prohibit a required religious practice or belief. See Warner v. Orange County Dep't of Prob., 115 F.3d 1068, 1075 (2d Cir. 1997) (probationer ordered to participate in Alcoholic's Anonymous' Twelve Step program, which "placed heavy emphasis on spirituality and prayer" and required participants to pray to God to overcome alcohol problem was an "intensely

religious event[]"). In addition, it remains unclear whether the "Good Lives Model and Boundaries Program" and DBT have non-secular purposes and if the primary purpose of the programs are to promote or prohibit religion. Without presently determining whether plaintiff has alleged facts constituting a violation of his First Amendment right to abstain from religion, defendants are entitled to qualified immunity because, at a minimum, it was objectively reasonable for defendants to perceive no constitutional violations in implementing the "Good Lives Model and Boundaries Program" and DBT to treat sex offenders.

### 2. Plaintiff's Fifth Amendment Claim

The Second Circuit has taken a position on the permissibility of required sex offender treatment using polygraph testing. United States v. Johnson, 446 F.3d 272, 280 (2d Cir. 2006). The plaintiff in Johnson, a convicted sex offender, contested certain supervised released conditions such as the use of polygraph testing because it violated his Fifth Amendment right against self-incrimination. Id. at 275. The court held that answering questions during a polygraph regarding past offenses and "with respect to any criminal prosecution unrelated to the conviction" does not waive a defendant's Fifth Amendment right against self-incrimination because the defendant maintains a right to challenge the polygraph results in court on Fifth Amendment grounds. Id. at 275, 280; see Asherman v. Meachum, 957 F.2d 978, 980-81 (2d Cir. 1992) (en banc) (rejected Fifth Amendment challenge because home release revocation based on refusal to answer relevant questions does not forfeit privilege against self-incrimination).

In addition, Johnson explained that polygraph testing served to further the sex offender treatment and did not restrict individual liberty because it was reasonably related to

promoting sentencing goals, which balances supervised release conditions against restraint of individual liberty. Johnson, 446 F.3d at 277. With respect to PPG testing, it remains unclear whether such examinations violate plaintiff's Fifth Amendment right as this invasive procedure carries the same disclaimer for other aspects of the program in that one's refusal to participate may hinder or prevent advancement in the program. The polygraph and PPG examination both carry this disclaimer, which may raise issues regarding government compulsion. It is unclear whether there was a deprivation of a constitutional right through use of these self-accusatory therapeutic tools. However, even if a constitutional right was clearly established at the time of the defendants' action, defendants are entitled to qualified immunity because it was objectively reasonable for them to perceive no constitutional violations in implementing self-accusatory therapeutic tools and PPG examinations. Accordingly, plaintiff's claims for monetary damages will be dismissed.

In light of the decision to dismiss plaintiff's claims, defendants' remaining arguments are moot and will not be considered.

## IV. **CONCLUSION**

Dismissal of plaintiff's complaint is warranted because of the Younger doctrine and because defendants are entitled to the defense of qualified immunity as a matter of law for plaintiff's remaining claims. Younger abstention is appropriate where the plaintiff has an adequate opportunity to assert his constitutional claims in an ongoing state court proceeding. Plaintiff was not deprived of the opportunity to assert his Fifth Amendment challenges in state court, and his First Amendment violations asserted in state court mirror those asserted

in his federal lawsuit. In addition, the pendency of his state court suit and the similar state and federal constitutional claims weigh against federal court involvement.

However questionable the facts demonstrate a violation of plaintiff's constitutional right from being subject to adverse consequences should he decline to consent to the challenged portions of his treatment program, defendants are entitled to qualified immunity and are immune from civil damages liability because defendants had objectively reasonable grounds to believe that their conduct was lawful. Applicable case law remains unclear on whether the plaintiff's rights were clearly established at the time defendants' actions occurred. Regardless of the questions surrounding the violation of plaintiff's constitutional rights, defendants receive qualified immunity, and therefore, plaintiff's claims for monetary damages are subject to dismissal as a matter of law.

Accordingly, it is

ORDERED that

1.  Defendants' motion to dismiss plaintiff's claims is GRANTED; and

2.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 6, 2009
       Utica, New York.